## ATKINSON v STATE ex JOHNSON

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 23, 1931

Kaufman & Neiman, Youngstown, for plaintiff in error.

John P. Danks, Youngstown, for defendant in error.

FARR, J.

Atkinson and the Johnson girl are colored people, living probably in the vicinity of Covington Street in the city of Youngstown. Atkinson is of the age of about eighteen years. Corrine Johnson was of the age of about thirteen or fourteen years when she became acquainted with Atkinson. Corrine Johnson lived with her parents in a home consisting of four rooms, two downstairs and two up. The Johnson home is occupied by another colored family, which occupies the second story, they being James Johnson and his wife and child.

Corrine Johnson says that she first met Atkinson on the first Sunday in May at the Tabernacle Baptist Church in the City of Youngstown, where she was introduced to him; that he accompanied her home upon that occasion, that he called to see her the next Sunday, that sexual intercourse occurred between them on his first visit, that he called again upon her in two weeks from that time, when sexual intercourse was again had by them. She claims that she became pregnant about the 10th or 11th of May, 1930, and that a child was born to her on the 10th of February, 1931. At the time of the birth of the child she was

about fourteen years of age. Owing to her age and physical condition the child could not be delivered in the natural way, but it had to be delivered by the cesarean section. Atkinson claims that he met Corrine Johnson on the Sunday before Decoration Day, which would be some little time later than she claims. He admits that he met her at the Tabernacle Baptist Church, in company with Mary Lee Robinson and Evelyn Williams, where he was introduced to her. He admits that he walked home with her at that time and that he called upon her some two weeks later, which would be in the month of June. Thus it will be seen that there is a sharp dispute between these parties as to their date of meeting and the time of their introduction by which they became acquainted, and likewise as to the date of the different acts of intercourse between them. Atkinson claims that on his first visit Johnson was at home,—the colored man who occupied the two rooms upstairs—that Johnson used the telephone in the lower room for some ten or fifteen minutes, and says that he left the home at that time after Atkinson had gone. There is some testimony on the part of two other witnesses by the name of Floyd and Gilmore. Floyd says that he understood that the Johnson girl was in trouble, that she was connecting him with it, and he went to the home to have a talk with her concerning the matter, and in that conversation she said that she did not blame him but that it was another colored boy by the name of Victor Crossland. Crossland at that time had removed from the state with his people and did not appear as a witness in the case. Thus it becomes apparent that the difference of dates is of importance. If Corrine Johnson is right in her statement as to the time the intercourse took place, then the birth of the child on the 10th of February, 1931, would certainly correspond to the date that she claims. Atkinson, however, claims that he met her the Sunday before Decoration Day, and that at that time Mary Lee Robinson and Evelyn Williams were present. It is rather strange that if this was the date, as claimed by Atkinson, why these two colored girls were not produced in court to testify to the date of the meeting. The proof stands practically upon the testimony of the Johnson girl and the Atkinson boy, save and except a witness testified that the mother or step-mother of Corrine Johnson says that she could not believe her, that she was in the habit of telling "stories". This was not disputed by the mother of the girl, altho she was upon the witness stand. However that may be, the jury saw fit to believe the story of the

girl. It is true, as claimed, no doubt, that this jury deliberated for quite a length of time and it finally rendered a verdict by nine jurors, three not signing the verdict. However, there is an outstanding circumstance in this case, disclosed by the testimony, which is practically undisputed. It is admitted by Atkinson that he went home with the Johnson girl, he being a young man of eighteen years of age, and she being thirteen or fourteen at that time. It was said of him in argument that he comes from a very respectable colored family, which no doubt is the case, and there is no occasion to dispute it. It was likewise suggested that this girl comes from a humbler home than he, and if that be true, then it is difficult to understand why Atkinson stepped out of his social class, sought this little thirteen or fourteen year old girl, took her home and then called a second time to visit with her, and it is admitted that they played the radio and danced. Atkinson is called upon to explain why he went to the home to visit, and it will be recalled that he was at the time a graduate or near graduate of a Youngstown high school, and this girl was in grade 6B at the Covington Street School, but he says by way of explanation:

"Q Did you know how old a girl she was?
A No, I did not.
Q Did you talk school to her?
A Yes.
Q What kind of school did you talk to her?
A About what did you do in school, talking and chewing gum.
Q You knew she was in the sixth grade then at Covington School?
A I figured that she had been going to school."

How improbable that story; what subject relating to educational matters could be of mutual interest between this high school graduate and a little girl in grade 6B? Certainly the matter of chewing gum was not a subject of interesting discussion between the two, or what they usually did in going to school. It is difficult to understand just what subject of mutual interest could obtain between these parties, and it is equally difficult to understand why Atkinson stepped aside from his class, sought out this girl from a humble home to make her his "girl friend" and companion, and it is conceded that he took her home, that he danced with her, that he called the second time and no doubt they danced the second time. There must have been some

purpose, some motive as yet unexplained, that took Atkinson, a boy in the higher walks of life, to this humble home upon these occasions. The jury having heard these witnesses, had the opportunity of determining the value of their statements, saw fit to believe the story of this unfortunate girl, whether true or false, and it is difficult to say as to the facts. It is a close case, as these cases are many times difficult and close, but Atkinson, knowing more of the world and its ways, saw fit to seek the company of this little girl, and having done so he assumed the danger incident to such association and the jury having determined the question of his guilt, it should be left just as they fixed it and the judgment is affirmed.

ROBERTS and POLLOCK, JJ, concur.